1

2

3

4                       UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    ZOILA SIERRA,                          Case No.  22-cv-01444-JSW

8                  Plaintiff,
                                            **ORDER GRANTING MOTION TO
9         v.                                DISQUALIFY COUNSEL**

10   COSTCO WHOLESALE CORPORATION,          Re: Dkt. No. 19

11                Defendant.

12

13        Now before the Court for consideration is the motion to disqualify Downtown L.A. Law

14   Group ("DTLA Law") from representing Plaintiff Zoila Sierra ("Plaintiff") filed by Defendant

15   Costco Wholesale Corporation ("Costco").  The Court has considered the parties' papers, relevant

16   legal authority, and the record in this case, and it finds this matter suitable for disposition without

17   oral argument.  *See* N.D. Civ. L.R. 7-1(b).  For the following reasons, the Court GRANTS

18   Costco's motion.

19                              **BACKGROUND**

20        Costco moves to disqualify DTLA Law from representing Plaintiff in this action.  Costco

21   argues disqualification is warranted because Anthony Werbin ("Werbin"), an attorney at DTLA

22   Law, previously represented Costco in numerous cases while employed with another firm and

23   possesses confidential attorney-client information belonging to Costco that is substantially related

24   to these proceedings.  Additionally, Costco asserts that Werbin's conflict is imputed to DTLA

25   Law, and the entire law firm should be disqualified.  DTLA Law argues that Werbin does not

26   possess Costco's confidential information and that DTLA Law has implemented an effective

27   ethical wall that prevents the need for the firm's disqualification.

28        Plaintiff filed this personal injury lawsuit against Costco on July 23, 2021, alleging causes

United States District Court
Northern District of California

1    of action for negligence and premises liability for a slip-and-fall incident at Costco's Hayward

2    store on July 23, 2019.

3        Werbin is an attorney at DTLA Law.  (Dkt. 24 at 3.)  Prior to joining the firm, Werbin

4    worked for the firm Manning & Kass, Ellrod, Ramirez, Trester LLP.  (Dkt. 19-2, Declaration of

5    Zois Johnston ("Johnston Decl."), ¶ 2; Dkt. 24-1, Declaration of Anthony Werbin ("Werbin

6    Decl."), ¶ 3.)  While at Manning & Kass, Werbin represented Costco in twenty-one personal

7    injury cases from July 5, 2017 to January 16, 2020 and served as Costco's trial counsel in one

8    case.  (Johnston Decl., ¶ 2, 4; Werbin Decl., ¶ 5.)  Werbin recorded 1,195 hours of time working

9    on Costco matters.  (Johnston Decl., ¶ 8; Dkt. 24-1, Declaration of Gevork Gazaryan ("Gazaryan

10   Decl."), ¶ 4.)

11       Costco avers that Werbin handled every aspect of the Costco cases on which he worked,

12   including developing strategy, communicating with Costco's employees and claims

13   administrators, reviewing confidential and privileged documents, preparing responses to

14   discovery, and taking and defending numerous depositions of Costco employees.  (Johnston Decl.,

15   ¶ 5.)  Costco also claims Werbin learned about Costco's strategy related to "constructive notice"

16   claims during this time.

17       Werbin attests that he never received confidential or proprietary information from Costco

18   during his representation.  (Werbin Decl., ¶ 9.)  Werbin avers that any information that he may

19   have regarding the defense of personal injury/premises liability claims derives from his own

20   personal knowledge and experience gained during his eight years as a licensed attorney, not from

21   handling claims for Costco.  (*Id.*, ¶ 10.)

22       Werbin is not counsel of record for Plaintiff in this case; Gevork Gazaryan of DTLA Law

23   represents Plaintiff.  DTLA Law attorneys are divided into teams, and the teams do not share team

24   members, workloads, or case files.  (Gazaryan Decl., ¶ 7.)  Werbin's team is not assigned any

25   Costco cases.  (*Id.*, ¶ 8.)  Werbin attests that he never consulted with, instructed, or advised any

26   attorney or staff member of DTLA Law about any Costco matter.  (Werbin Decl., ¶ 20.)  In

27   December 2021, DTLA Law implemented a new firewall system, FileVine, which prevents

28   employees from viewing case files, or accessing documents relating to a matter, if they are not

United States District Court
Northern District of California

1  assigned to the case. (Dkt. 24-1, Declaration of Amira Rezkallah ("Rezkallah Decl."), ¶¶ 3-4.)

2  Because Werbin is not assigned to any Costco cases, he cannot view any Costco case files. (*Id.*, ¶

3  5.)

4       The Court will address additional facts as necessary in the analysis.

5  **ANALYSIS**

6  **A.**    **Applicable Legal Standard.**

7       "A trial court's authority to disqualify an attorney derives from the power inherent in every

8  court to control in furtherance of justice, the conduct of its ministerial officers, and of all other

9  persons in any manner connected with a judicial proceeding before it, in every matter pertaining

10  thereto." *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys., Inc.*, 20 Cal. 4th 1135,

11  1145 (1999).[1]  "Whether an attorney should be disqualified is a matter addressed to the sound

12  discretion of the trial court." *Henriksen v. Great American Savings & Loan*, 11 Cal. App. 4th 109,

13  113 (1992).  "In exercising that discretion, the trial court is required to make a reasoned judgment

14  which complies with the legal principles and policies applicable to the issue at hand." *Id.*  Due to

15  the potential for abuse, motions to disqualify are subject to strict judicial scrutiny. *Optyl Eyewear*

16  *Fashion Int'l Corp. v. Style Cos., Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985).  Because

17  disqualification is a drastic measure, it is generally disfavored and should only be imposed when

18  absolutely necessary. *Concat LP v. Unilever, PLC*, 350 F.Supp.2d 796, 814 (N.D. Cal. 2004).

19  Further, "[b]ecause a motion to disqualify is often tactically motivated and can be disruptive to the

20  litigation process, it is a drastic measure that is generally disfavored." *Id.*  A court should examine

21  the implications of disqualification, including "a client's right to chosen counsel, an attorney's

22  interest in representing a client, the financial burden on a client to replace disqualified counsel,

23  and the possibility that tactical abuse underlies the disqualification motion." *SpeeDee Oil*, 20 Cal.

24  4th at 1145.

25       A former client may seek to disqualify a former attorney from representing an adverse

26

27  _____

[1] California state law governs motions to disqualify in California federal courts. *See In re Cnty. of*
*L.A.*, 223 F.3d 990, 995 (9th Cir. 2000) ("Because we apply state law in determining matters of

28  disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue.").

United States District Court
Northern District of California

1    party by showing that the former attorney possesses confidential information adverse to the former

2    client.  *H.F. Ahmanson & Co. v. Salomon Bros., Inc.*, 229 Cal. App. 3d. 1445, 1452 (1991).

3        California Rule of Professional Conduct 1.9 addresses the ongoing duty of confidentiality

4    and loyalty that an attorney owes his former clients.  Rule 1.9 provides that:

> A lawyer who has formerly represented a client in a matter shall not
> thereafter represent another person in the same or a substantially
> related matter in which that person's[] interests are materially adverse
> to the interests of the former client unless the former client gives
> informed written consent.[]

Cal. R. Prof. Conduct 1.9(a).  Courts will look to the Rules of Professional Conduct for guidance

in analyzing questions of disqualification.  *Kirk v. First Am. Title Ins. Co.*, 183 Cal. App. 4th 776,

792 (2010).

**B.    The Court Grants Costco's Motion to Disqualify Counsel.**

The Court first considers whether a substantial relationship exists between Werbin's

previous representation of Costco and the instant case before turning to the issue of whether any

conflict is imputed to DTLA Law and requires its disqualification in the instant action.

**1.    A substantial relationship exists between Werbin's previous representation of
Costco and the current case.**

A substantial relationship exists "when the evidence before the trial court supports a

rational conclusion that information material to the evaluation, prosecution, settlement, or

accomplishment of the former representation given its factual and legal issues is also material to

the evaluation, prosecution, settlement or accomplishment of the current representation given its

factual and legal issues."  *Jessen v. Hartford Cas. Ins. Co.*, 111 Cal. App. 4th 698, 713 (2003).  As

part of its review, courts should examine the "time spent by the attorney on the earlier cases, the

type of work performed, and the attorney's possible exposure to formulation of policy or

strategy."  *H.F. Ahmanson*, 229 Cal. App. 3d. at 1455.

Importantly, "[i]f the relationship between the attorney and the former client is shown to

have been direct—that is, where the lawyer was personally involved in providing legal advice and

services to the former client—then it must be presumed that confidential information has passed to

the attorney and there cannot be any delving into the specifics of the communications between the

4

attorney and the former client in an effort to show that the attorney did or did not receive confidential information during the course of that relationship." *Jessen*, 111 Cal. App. 4th at 709. Thus, in a direct attorney-client relationship "disqualification will depend upon the strength of the similarities between the legal problem involved in the former representation and the legal problem involved in the current representation." *Id.*

Here, the evidence points to a direct attorney-client relationship. Werbin served as counsel for Costco on twenty-one slip-and-fall cases, and he was a key player in many of these cases. He handled cases for Costco from inception through trial. Because he personally provided legal advice and services to Costco, Werbin had a direct attorney-client relationship with it. Under California case law, the Court presumes that he learned Costco's confidential information. *Jessen*, 111 Cal. App. 4th at 709.

Thus, whether Werbin should be disqualified in the present case depends on the strength of the factual and legal similarities between his prior and current representation. *Id.* Costco must show that "there is a substantial risk that the representation will involve the use of confidential information acquired during the course of the prior representation." *Farris v. Fireman's Ins. Co.*, 119 Cal. App. 4th 671, 681 (2004). Here, Werbin's prior representations and the current case involve slip-and-fall cases with similar constructive notice issues. This is not a tangential issue in the case, but rather a central issue that may become dispositive. Additionally, Costco's current defense counsel and Werbin shared defense strategies and tactics for defending constructive notice claims asserted against Costco when they shared Costco as a client. Werbin's learned knowledge of Costco's internal policies, procedures, and strategies relating to constructive notice issues creates a substantial risk his representation of Plaintiff in this action would involve confidential information he previously acquired from Costco. Although some factual differences likely exist between the prior and current representation, the factual similarities of the cases create a substantial risk that Werbin's representation of Plaintiff would involve the use of previously acquired confidential information.

Therefore, because Werbin had a direct attorney-client relationship with Costco and because of the strength of the legal and factual similarities between the prior and current

1    representation, Werbin should be disqualified from representing Plaintiff in this action.

2        **2.      DTLA Law does not rebut the presumption of vicarious disqualification.**

3        Because the Court has concluded that Werbin would be disqualified from representing

4    Plaintiff in this action, the question is whether Werbin's disqualification is imputed to DTLA Law.

5    The case law is mixed regarding whether vicarious disqualification of the entire firm is automatic.

6    *See Kirk*, 183 Cal. App. 4th at 800-10 (discussing history of the law of vicarious disqualification).

7    Although vicarious disqualification is the general rule and courts should presume knowledge is

8    imputed to all members of a tainted attorney's law firm, "in the proper circumstances, the

9    presumption [of vicarious disqualification] is a rebuttable one, which can be refuted by evidence

10   that ethical screening will effectively prevent the sharing of confidences in a particular case." *Id.*

11   at 801.  DTLA Law bears the burden to show that "the practical effect of formal screening has

12   been achieved." [2] *Id.* at 810.  DTLA Law must provide "evidence that ethical screening will

13   effectively prevent the sharing of confidences in a particular case." *Id.* at 801.  DTLA Law must

14   also show that Werbin "has not had and will not have any involvement with the litigation, or any

15   communication with attorneys or []employees concerning the litigation, that would support a

16   reasonable inference that the information has been used or disclosed." *Id.* at 810.

17       Two elements are necessary in an effective screen.  First, a vicariously disqualified firm

18   must have imposed a timely screen that is implemented when the conflict first arises.  *Id.*  A firm

19   cannot "wait until [a] trial court imposes screening measures as part of its order on [a]

20   disqualification motion." *Id.*  "[S]creening should be implemented before undertaking the

21   challenged representation or hiring the tainted individual.  Screening must take place at the outset

22   to prevent any confidences from being disclosed." *In re Complex Asbestos Litig.*, 232 Cal. App.

23   3d 572, 594 (1991).

24       Second, a vicariously disqualified firm must show that they have implemented

25   preventative measures that guarantee that information will not be conveyed to the disqualified

---

[2] Costco relies on *Hitachi, Ltd. v. Tatung Co.*, 419 F.Supp.2d 1158 (N.D. Cal. 2006), to argue that California law rejects ethical walls to circumvent disqualification.  However, *Hitachi* pre-dated the decision in *Kirk,* and even the *Hitachi* court recognized a "move toward increased flexibility" with regard to ethical walls and vicarious disqualification.  *Id.* at 1164.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   attorney.  *Kirk*, 183 Cal. App. 4th at 810.  A firm's burden is not met simply by producing

2   "declarations stating that confidential information was not conveyed or that the disqualified

3   attorney did not work on the case."  *Kirk*, 183 Cal. App. 4th at 810.

4        Here, DTLA Law fails to show it timely screened Werbin from this case at the outset.  The

5   instant case was filed on July 23, 2021 in Alameda Superior Court.  (Dkt. 2, Ex. A.)  DTLA Law

6   did not begin using the FileVine software, which prevents Werbin from seeing case files involving

7   Costco, until December 2021.  (Rezkallah Decl., ¶ 3.)  Prior to implementing FileVine, "all client

8   files were viewable by all DTLA employees."  (*Id.*)  Thus, FileVine was not in place at the time

9   this case was filed in July 2021, and Werbin presumably could view all DTLA Law client files,

10  including any cases against Costco.

11       DTLA Law does not provide any information as to what specific steps it took to effectively

12  screen Werbin during the five months between the filing of this case and the implementation of the

13  FileVine software.  Instead, DTLA Law provides declarations that Werbin has not worked on the

14  case and that he has not conveyed any of Costco's confidential information to other DTLA Law

15  employees.  This is not sufficient to show proper preventative measures.  *See Kirk*, 183 Cal. App.

16  4th at 810.  Thus, DTLA Law has not shown it implemented a timely screen or proper

17  preventative measures, and therefore it has not met its burden to rebut the presumption against

18  vicarious disqualification.

19       The Court concludes that DTLA Law should be disqualified from representing the Plaintiff

20  in this action.

21  **C.**     **The Court Overrules Plaintiff's Evidentiary Objections.**

22       On August 8, 2022, the Court issued an Order striking Plaintiff's opposition brief in part

23  because Plaintiff failed to include her evidentiary objections to Costco's motion within her brief as

24  required by the Local Rules.  (*See* Dkt. No. 23.)  Plaintiff filed an amended opposition brief,

25  which is still not in compliance with this Court's Civil Standing Orders because, with the

26  inclusion of her evidentiary objections, Plaintiff's brief exceeds the page limit.  *See* Civil Standing

27  Orders ¶ 6.

28       However, in the interest of completeness, the Court has considered Plaintiff's objections

and overrules them.  Plaintiff objects to Costco's evidence as irrelevant and not based in personal knowledge.  However, Werbin's prior work for Costco is directly relevant to the issue before the Court.  Further, court filings and orders from other proceedings are proper subjects of judicial notice.  The Court denies as moot the remaining objections because the Court did not rely on the evidence in resolving this motion.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Costco's motion to disqualify DTLA Law.  DTLA Law is disqualified from representing Plaintiff Zola Sierra in this action.  Within thirty (30) days of this Order, Plaintiff shall either retain new counsel or elect to proceed *pro se* and notify the Court how she intends to proceed.

**IT IS SO ORDERED.**

Dated: September 23, 2022.

_____
JEFFREY S. WHITE
United States District Judge